WILLIAM H. MAYBURY, ADMINISTRATOR, ETC., v. MARY BERKERY.

*Money had and received—Proceeds of insurance policies—Set-off—Evidence—Promissory notes—Account stated—Presumption—Burden of proof—Estoppel.*

1. Where, in a suit by an administrator to recover moneys paid to the defendant upon policies of insurance held by defendant as security for loans made to the decedent (her son), the defendant seeks to set off a claim for the rent of a portion of a house which the decedent occupied in his lifetime,—the remainder being occupied by decedent's father up to the time of his death, and afterwards by the defendant,—it is competent

for the plaintiff, as tending to establish his claim that the occupancy of the house by the decedent was rent free, to show that the decedent had contributed largely to the construction of the house, and had, both before and after the death of his father, made expensive improvements and paid taxes upon the entire property, and that during the entire time of such occupancy the decedent paid no rent, nor was any claim for rent ever made upon him.

2. The defendant exhibited a paper purporting to be a statement of the account between the decedent and herself, showing loans made by her to him at various times up to and including December 20, 1890, and also one of $2,000 made December 16, 1891, and aggregating, with interest charges, $15,515. It further appeared that on December 23, 1891, the decedent executed a note for $10,000 to the defendant, payable six months after date. Plaintiff testified that when he called upon the defendant in August, 1892, to inquire relative to the policies of insurance and the indebtedness of decedent to her, he asked defendant for a statement of said indebtedness, and she said she did not think she could give it; that thereupon her son-in-law, who was present, stated that the defendant had a note for $10,000 against the decedent, and that that should be sufficient to show the indebtedness. It further appeared that no moneys were advanced to the decedent by the defendant after December 20, 1890, until December 26, 1891, and that there was no new consideration for the $10,000 note, except the $2,000 loaned December 26, 1891, if that was a part of the consideration; and it was not pretended that the note was solicited for any purpose which the defendant had in view, except as evidence of the indebtedness. And it is held that the note was *prima facie* evidence of an account stated between the parties; that the burden was upon the defendant to rebut the presumption; and that whether this presumption had been removed was, under the facts in this case, a question for the jury.

3. There was testimony tending to show that the $2,000 received by the decedent December 26, 1891, was used to pay a demand which existed prior to December 23, 1891, the date of the note; that decedent had been, prior to December 26, 1891, making efforts to raise the money from other sources to meet said demand; and that the only claim made by the defendant after the death of the decedent and prior to the trial was the amount of the note. The plaintiff contended that the note embraced the $2,000 received after its date. There was no evidence as to the date of the *delivery* of the note. And it is held that the note is presumed to have been executed and

delivered on the day of its date, but that such presumption is removable.

4. One of the policies was payable to the defendant, and the court refused to allow the jury to charge her with the proceeds of this policy; but the jury found, in answer to a special question, that the policy was held by the defendant as security simply. And it is held that, it having been agreed between the defendant and the decedent that the amount of said policy, when received, should be applied upon, and should *pro tanto* extinguish, decedent's indebtedness to defendant, which agreement was valid, the defendant cannot be heard to say that the proceeds of said policy are not applicable to the payment of the debts of the decedent, nor can she offset the portion of said indebtedness thus extinguished against the moneys received on the other policies.

Error to Wayne. (Hosmer, J.) Argued June 27, 1894. Decided September 25, 1894.

*Assumpsit.* Both parties bring error. Judgment modified by increasing the amount of the same, and as modified affirmed. The facts are stated in the opinion.

*Maybury & Lucking (John D. Conely,* of counsel), for plaintiff.

*J. T. Keena,* for defendant.

McGRATH, C. J. James S. Berkery died July 29, 1892, leaving a widow and children. This suit is against the mother of the decedent, and is based upon the claim that during his lifetime James S. Berkery had from time to time borrowed sums of money from his mother, and to secure the payment thereof his mother held at the time of his death three life insurance policies, one of $5,000 in the Michigan Mutual Life Insurance Company, one of $5,000 in the National Life Insurance Company, and one of $2,000 in the Catholic Mutual Benefit Association. The first two were payable to his mother in case she survived him, otherwise to his legal representatives. The Catholic

Mutual Benefit Association policy was payable to his mother. It is claimed that after the death of plaintiff's intestate the mother collected the amounts of the three policies, and that the amounts so collected were largely in excess of the indebtedness at the time of the death of James S. Berkery.

The administrator testified that in August, 1892, he and one Breen, son-in-law of the defendant, as special administrators of the estate of the decedent, called upon defendant to inquire relative to the policies and the indebtedness; that she stated that she held three policies, aggregating $12,000, as security for the payment of the indebtedness to her; that in response to the inquiry as to how much the indebtedness was she stated that she would be satisfied to take the $12,000 represented by the policies; that he then asked her for a statement of the indebtedness, but she stated that she did not think she could give it; that Mr. Breen spoke up, and said, "She has a note of James for $10,000, and that should be sufficient to show the indebtedness;" that no itemized statement had ever been given to witness as to the indebtedness, but in a few days afterwards Mr. Breen called upon him, and exhibited a note dated December 23, 1891, for $10,000, executed by decedent, and payable six months after date to defendant, with interest at 6 per cent. Plaintiff introduced the note, and then gave evidence of payment to defendant by check of $3,000 in February, 1892, and of $2,000 in June, 1892, and of the collection by defendant of the amount of the insurance policies, and rested. Defendant then introduced in evidence another note of $5,000, dated April 29, 1889, set up a claim of rent for the house occupied by decedent from the date of his marriage, June 28, 1887, to the date of his death, at the rate of $25 per month, and rested.

Plaintiff then gave evidence tending to show that the

note for $5,000 had not been before that time mentioned; that John Berkery, a son of the defendant, had, after the death of plaintiff's intestate, taken certain papers from a desk belonging to decedent, against the protest of the widow of decedent; that decedent lived in part of a double house, and defendant lived in the other part; that the land was owned by his father when the house was built, and before that time the father had given defendant a deed thereof, to take effect at the father's death; that decedent had in fact contributed largely to the construction of the house upon the premises, and had, both before and after his father's death, made expensive improvements and paid taxes and insurance upon the whole property; that from and after his marriage, and up to the time of his father's death, and afterwards, he had resided in the house, had paid no rent, and no claim therefor had ever been made; that these dealings had originated before his father's death, his father having executed a mortgage upon a farm which he then owned to the Detroit Savings Bank, as security for loans made by the son; that after his father's death, in April, 1889, two notes, amounting to $5,000, which were secured by said mortgage, were renewed, and said notes were paid July 11, 1890, out of the proceeds of the farm, the farm having been deeded to the mother, the deed to take effect at the death of the father.

The defendant then for the first time exhibited a paper purporting to be a statement of the account between the parties, alleging advances made to decedent during 1890, as follows: July 10, $700; July 10, $5,415.50; July 12, $1,000; September 10, $3,000; October 14, $200; November 15, $250; December 20, $1,500; and December 26, 1891, $2,000,—aggregating, with interest charges, $15,515; and crediting plaintiff with the sums theretofore shown by plaintiff to have been paid, to wit, February 1, 1892,

$3,000, and June 15, 1892, $2,000. Plaintiff then showed a further payment to defendant on November 21, 1890, of $2,000, for which no credit was given in the statement aforesaid.

Plaintiff's contention upon the trial was that the note for $10,000, dated December 23, 1891, embraced the entire indebtedness, including the $2,000 charged in the statement as received by decedent December 26, 1891, and that upon this note there had been paid the sum of $5,000, and claimed the difference between the balance and the sum of the insurance moneys collected.

The court refused to allow the jury to charge the defendant with the proceeds of the Catholic Mutual Benefit Association policy, but at plaintiff's suggestion the jury, upon a special question put, were allowed to find, and did find, that the Catholic Mutual Benefit Association policy was held by defendant as security simply.

The jury found a verdict upon plaintiff's theory for $5,119.20. Both parties bring error.

Plaintiff insists that he was entitled to a further credit upon the account for the avails of the Catholic Mutual Benefit Association policy. Defendant contends:

1. That the court erred in admitting the testimony showing that decedent paid part of the cost of the construction of the house in which decedent and defendant lived.

2. That there was no evidence from which the jury might infer that the $10,000 note of December 23, 1891, was a settlement of account between decedent and his mother, including the $2,000 paid decedent December 26, 1891.

3. That the court erred in submitting the special question relative to the Catholic Mutual Benefit Association policy.

1. The testimony as to decedent's participation in the construction of the house in which he lived was brought out by defendant's claim for rent. It was competent for plaintiff to show that decedent's occupancy of the house

was rent free, and to show all the circumstances bearing
upon that question, the relation of the parties, the fact
that no demand or claim had ever been made for rent,
and a substantial consideration for that understanding and
agreement.

2. Upon the second point made by defendant, it ap-
peared that no moneys had been advanced by defendant
after December 20, 1890, until December 26, 1891. There
was no new consideration for the $10,000 note, except the
$2,000, if that was a part of the consideration. There was
no other advance made at or near the time of giving the
note, and none had been made for a year before the note
was given. It was not pretended that the note was solicited
for any purpose which defendant had in view, except as
evidence of the indebtedness. Clearly, under these circum-
stances, the note was *prima facie* evidence of an account
stated between the parties, and the burden was upon
defendant to rebut the presumption. Rice, Ev. 103; 1
Tayl. Ev. (Text-Book Ser.) § 124; *Lake v. Tysen*, 6 N.
Y. 461; *Davis v. Gallagher*, 55 Hun, 593.

There was testimony tending to show that the $2,000
received by decedent December 26, 1891, was used to pay
a demand which existed on December 23, and that decedent
had been, prior to December 26, making efforts to raise
the money from other sources to meet this payment. There
was also evidence tending to show that the only claim
made by defendant after the death of plaintiff's intestate,
was the amount of the $10,000 note. Indeed, no claim
was made to this sum until after the defendant had once
rested after having set up the further claim upon the
$5,000 note and the claim for rent. There was no evidence
as to the date of the delivery of the note. The presump-
tion undoubtedly is that it was executed and delivered on
the day of its date, but that presumption was removable.

It is urged that there is no evidence that the note was

given in payment, and that the taking of a note or accept-
ance is not payment in the absence of an agreement that
it shall be received in payment, and and that upon non-
payment the holder may sue upon the original cause of
action, and this defendant attempted to do; and it is sought
to demonstrate by statements made in behalf of defendant
and used upon the trial that a sum in excess of the
amount of the note was due at its date, and hence that
the $2,000 paid over December 26 could not have been
included in said note. The difficulty with the demonstra-
tion is that at the very outset of defendant's case, and
before she undertook to make any proof of the original
indebtedness, intending to swell the indebtedness to her,
she set up a claim upon the $5,000 note, which it is here
conceded was not an independent indebtedness, but was
already embraced in the note for $10,000. She next pre-
sents a statement purporting to be a statement of debts
and credits, in which the estate is credited with only such
payments as, after much controversy, have been actually
shown to have been made. Plaintiff, however, pending
the trial, in consequence of a remark drawn out upon a
rigid cross-examination, is enabled to discover another bank
where defendant had made deposits, and trace through a
witness from such bank a further payment to defendant,
not credited in the statement, of the sum of $2,000.
There was no testimony that no other payments had been
made, and no credits were acknowledged until the pay-
ments had been ferreted out and proven by indisputable
testimony in the shape of checks and New York drafts,
indorsed by the defendant. In the absence of the note,
the jury would not have been justified in giving to plaint-
iff credit for payments not proven to have been made;
but with the note before them it was for them to say
whether the presumption as to its having been given in
settlement was removed.

3. In view of the conclusion which we have reached as to the Catholic Mutual Benefit Association policy, it is unnecessary to discuss defendant's third assignment. The jury have found that this policy was held by defendant as security for the payment of the indebtedness. This is not a controversy between the association and a creditor. The amount of the policy has been actually received by defendant, and she refuses to apply it. It was agreed between the parties that the amount of said policy, when received, should be applied upon, and should *pro tanto* extinguish, the indebtedness. That was a valid agreement. Plaintiff is not now seeking to recover the proceeds of that policy. He is simply insisting upon its application in accordance with the terms of the agreement, and that the indebtedness to that extent shall not be offset against other moneys which defendant has collected. Suppose the same agreement had been made with a stranger and creditor, and the association had paid over the proceeds of the policy, could such creditor be heard to say that the proceeds of the policy were not applicable to the payment of the debts of the decedent, and that he could sue and recover the debt? The insurance contract was with decedent. It was within his power to change the beneficiary at any time.

Plaintiff is entitled to an addition to the judgment of the sum of $2,000, with interest from the date of the collection of that sum from the association. With this modification the judgment is affirmed.

The other Justices concurred.