## MARMION *v.* McCLELLAN.

## McCLELLAN *v.* MARMION.

ACCOUNTING; MUTUAL ACCOUNTS; PRESUMPTIONS; EQUITY PRACTICE; ANSWER AS EVIDENCE; EVIDENCE; TRUSTS AND TRUSTEES; AUDITOR'S REPORTS, EXCEPTIONS TO; INTEREST.

1. Where cross demands or mutual accounts or dealings exist between parties, and one gives to the other a note or security for the payment of a definite amount growing out of the transactions, or some of them, the presumption arises that the amount for which the note or security is given is the balance due the party to whom it is given upon a statement or settlement of the mutual accounts existing between them at the time, including all the items and demands which each then had against the other; and the burden is upon the party controverting such presumption to prove by clear and satisfactory evidence, not only that some items were omitted from such accounting, but also that they were omitted by the mutual mistake of both parties or the fraud of the party to whom the note or security is given.

2. New and affirmative matter set up in an answer to a bill in equity and not responsive to the allegations of the bill, is not evidence in favor of the defendant.

3. A defendant in equity who claims credit for sums alleged to be
   due him from a complainant executor, for medical services
   and board furnished the decedent, is an incompetent witness
   under Sec. 858, R. S. U. S., as it involves his testifying as to
   transactions with and statements of a decedent.
4. A trustee is incompetent to purchase the property he holds in
   trust from his *cestui que trust*; and although no conventional
   trust relations may exist between parties, yet if a relation of
   confidence exists, the person in whom confidence is reposed
   will not be permitted to derive any personal advantage from
   dealing with the property of the other ; and any sale by the
   party reposing the trust to the other will be avoidable at the
   election of the former, unless he acted with a knowledge of all
   the material facts affecting the transaction and fully under-
   stood he was disposing of the property, and received, approxi-
   mately at least, the full value thereof.
5. Where an auditor's report charges a given sum against one of the
   parties with interest from a certain date, an exception to the
   allowance of the sum awarded raises the question as to whether
   the interest was allowed from the proper date.
6. Where in a proceeding in equity for an accounting it is deter-
   mined that such a relation of confidence existed between the
   complainant's decedent and the defendant that a profit made
   by the defendant on a purchase of property from the decedent
   during her life time belongs to her estate, the defendant may
   properly be relieved of paying interest prior to the decree re-
   quiring him to account for such profit.

Nos. 591 and 592. Submitted May 5, 1897. Decided December 7, 1897.

HEARING on an appeal and a cross-appeal from a decree
in a suit for an accounting. *Affirmed.*

The Court in its opinion stated the case as follows:

These are cross-appeals from a decree of the Supreme
Court of this District, made upon a bill and cross-bill. The
original bill was exhibited by Elizabeth A. Walker against
William V. Marmion and others. Miss Walker died be-
fore final decree in the court below, and the cause was re-
vived by consent in the name of John McClellan, her ex-
ecutor.

The original bill charged that the said Marmion had
received, as the complainant's trustee, all her estate, con-
sisting of her distributive share in the estate of her mother

and the proceeds of sale of her interest in certain real estate in the city of Washington, and that he had failed to give her any satisfactory account of the investments thereof or of the profits therefrom, but that on the 2d day of May, 1887, he executed a deed of trust to Joseph G. McClellan conveying lot three (3) and a part of lot four (4), in square one hundred and twenty-six (126), in the city of Washington, known as premises 1719 I street, in which it is recited that he then held in trust for the sole use and benefit of the complainant the sum of thirty-eight thousand dollars in three per cent. United States Government bonds, to secure the return whereof said deed was given, and delivered said deed to complainant together with a note bearing the same date made by the said Marmion to her order for sixty-seven hundred dollars, payable one year after date with interest at three per centum per annum, with the request that she should not record said deed, but that she would keep the transaction secret, with which request she complied for a time, until she learned that on the 4th day of December, 1888, there was recorded in the Land Records of the said District a deed of trust from said Marmion for the same property, to William W. Boarman, trustee, to secure George C. Boarman the sum of thirty-eight thousand dollars, whereupon, on the 10th day of December, 1888, she caused the said deed of trust to the said McClellan to be recorded in the said Land Records, and the bill alleged that the deed of trust to Boarman was without consideration and void, and prayed that said Marmion should be required to account for said moneys, that the amount justly due from him to her should be ascertained, and that the deed of trust to McClellan should be declared a security for the payment thereof, and that the deed of trust to Boarman should be declared void as to her.

The defendant Marmion, in his answer to the original bill, denies that he was the trustee of Miss Walker, but admits that he received $5,000, her distributive share in her

mother's estate, and $2,300, the purchase money for her interest in real estate, to invest for her, but denies that she reposed any confidence or trust in him in relation thereto, but avers that he invested the same as she directed, and collected and paid the interest thereon to her periodically as the same fell due, and that he had also collected and received the principal and paid portions thereof to her from time to time, and that she was indebted to him for board and medical attendance in a sum in excess of the balance of the principal that would otherwise be due her from him on account. of said moneys. He admits the giving of the deed of trust to McClellan and the execution and delivery of the note of $6,700 to her, but denies that he owed her anything at that time, and says that the whole supposed indebtedness was. fictitious, as Miss Walker well knew, and that it was given for a purpose of which she was cognizant, with an understanding that the said deed of trust was not to be recorded except upon the happening of a certain emergency, which has never arisen, and that the $6,700 note was delivered to her to give color to the claim that he was indebted to her in the sum recited in the deed if the occasion therefor should arise. He also admitted that the said deed of trust to Boarman was. for a fictitious indebtedness.

Having answered the original bill, the said Marmion filed his cross-bill in the cause against the said Walker and Joseph G. McClellan, trustee, alleging that at the time of the execution of the deed of trust by him to said McClellan for the apparent purpose of securing the said Walker, he was not indebted to her in any sum, but that upon a proper settlement of the accounts between them, she would have been indebted to him; that the said deed of trust had been recorded in violation of an understanding between him and Miss Walker at the time it was delivered to her, and prayed that the accounts between them should be settled, and the said deed of trust should be cancelled and delivered up.

William W. Boarman, trustee, and George C. Boarman,

answered the original bill admitting that the supposed indebtedness apparently secured by the deed of trust to W. W. Boarman, was fictitious, the said Geo. C. Boarman answering that he knew nothing of the deed or note therein mentioned, and did not know of their existence until several days after the deed was recorded, and that he had advanced said Marmion no money, and claimed no right or benefit under said deed.

After the revival of the case by agreement in the name of John McClellan, executor of Elizabeth A. Walker, he filed an answer denying the allegations of the cross-bill which were inconsistent with the allegations of the original bill. Issue was joined upon the several answers, and evidence was taken by both the principal parties litigant.

The following facts appearing by the pleadings and evidence are conceded or not seriously contested, to wit:

That the said Marmion, on the 1st day of July, 1880, married Caroline W. McClellan, a niece of the said Elizabeth A. Walker, and granddaughter of one Caroline H. Walker, the said Elizabeth being a daughter of the last named; that at the time of said marriage the three ladies mentioned lived together, and had for some time prior thereto, in house No. 1722 I street in this city; that the said Caroline H. Walker died on the 5th day of July, 1880, and the defendant and wife in the latter part of that month visited Capon Springs, and the said Elizabeth A. Walker accompanied them as their guest, and in September following she went to live with them in the residence No. 1722 I street, of which she was the owner of an undivided one-fourth interest, and Mrs. Marmion of an undivided one-twelfth interest, the remaining two-thirds being owned by the other heirs of Wm. Mc. Walker; that the said Elizabeth A. Walker continued to reside with said Marmion and live in his family from that time until about December, 1888, upon what terms or particular arrangement does not satisfactorily appear, and is not material to the decision of

this case; that she was infirm and quite an invalid when she commenced to live with Marmion and gradually and continually grew more infirm; that the said Marmion, who is a physician, claims to have treated her professionally during all this time; that in February, 1881, the said Marmion received from her $5,000, being her distributive share of her mother's estate, to invest and manage for her, the greater part of which he did invest in United States Government bonds and deposited the residue to her credit in bank, the bonds being registered in his name and remaining in his possession; that in June, 1881, the said Marmion being informed by John McClellan, the agent of the owners of 1722 I street, except Mrs. Marmion and Miss Walker, that Calderon Carlisle had offered to purchase the two-thirds interest in the property at the rate of $9,000 for the whole, immediately offered to give $100 more, which offer being reported by McClellan to Mr. Carlisle, the latter immediately offered $9,200, which McClellan accepted without further consultation with Marmion, and on the 21st day of June, 1881, a conveyance was made to Mrs. Carlisle of the two-thirds interest represented by McClellan, at the rate of $9,200 for the whole; that on the 22d day of June, 1881, Marmion wrote Carlisle as follows:

"Mr. Carlisle.

"Dear Sir: I understand from Jack that he has sold you the two-thirds interest in this house which he represented. Miss Walker tells me that Jack said 'you would,' he thought, 'sell your interest to me.' If such be the case, I should like to purchase it, and my only reason for writing at this time is that I want to build at once. Will you kindly let me know your price, provided you are willing to sell?

"Very respect.,          W. V. Marmion.

"1722 I street, June 22, 1881."

And on the 24th of the same month received the following reply from Mr. Carlisle:

"Under the peculiar circumstances of this case I was

induced to give for the two-thirds bought at the rate of $9,200 for the whole property just $200 more than Jack and Mr. F. believed to be its full value, and $1,200 more than Mr. Wag.'s estimate of its full value. Neither my wife nor I have the least desire to sell. On the contrary, I wish to purchase for her your wife's interest and that of Miss Walker, and I am ready immediately to give full value for these interests."

That on the 25th day of June, 1881, the said Marmion and his wife conveyed to the said Elizabeth A. Walker the one-twelfth interest of Mrs. Marmion in said real estate, the consideration recited in the deed being $766.66, and on the same day Miss Walker conveyed the interest thus vested in her and her own one-fourth interest in said real estate to said Marmion, the consideration mentioned in said last-mentioned conveyance being $3,066.66, which was at the rate of $9,200 for the whole property, and $2,300 for the interest of Miss Walker, but in fact no money passed between the parties to said conveyance at the time thereof; that some time subsequently the said Marmion invested the greater part of the amount of $2,300 in United States bonds, registered in his own name and retained in his possession, and deposited the balance of the $2,300 to the credit of Miss Walker with her bankers; that on the 6th day of September, 1881, Marmion conveyed to Mrs. Carlisle the one-third interest in 1722 I street vested in him by virtue of the deed of Miss Walker to him for the consideration of $4,366, which was at the rate of $13,098 for the whole property and $3,274.50 for the one-fourth interest of Miss Walker; that the bonds purchased by Marmion with the $5,000 and $2,300 were of several issues and bore interest at different rates, the investment being changed from time to time to other issues, as some of the bonds were called in by the Government, until finally all of the investment was in 3 per centum bonds, and the face value thereof was $6,700, and some time in the year 1885 (the exact date does not appear

in the evidence) Marmion gave Miss Walker his note for $6,700; that he collected the interest on these bonds from the Government, it being paid by checks to his order, and paid it over to Miss Walker by his own check to her order, or to bearer deposited in her bank account; that these last mentioned 3 per centum bonds were called in from time to time, the last being called in in 1887 or 1888, but when so called in no part of the principal was paid to Miss Walker, but Marmion continued to pay her the interest, and on the 2d day of May, 1887, he gave her his note in the following language:

"6,700.00.          WASHINGTON, D. C., May 2, 1887.

"Twelve months after date I promise to pay to the order of Elizabeth Agg Walker six thousand and seven hundred dollars, at Riggs' bank, with interest, at the rate of 3 per cent. per annum, from date until paid, value received.

"No. four.          W. V. MARMION.

"Due ——— ———.

"This note in lieu of and to take place of that given in 1885.

"(Endorsed:) This note to be extended until May 3rd, 1889.   E. A. Walker."

And on the same day he executed a deed of trust to Joseph G. McClellan, reciting therein that he held in trust for the sole use and benefit of the said Elizabeth A. Walker the sum of thirty-eight thousand dollars in three per centum United States Government bonds, and that to secure to her the return of said bonds and the payment of the interest thereon quarterly he had executed his four promissory notes, two for the sum of ten thousand dollars each, one for eleven thousand three hundred dollars, and one for six thousand seven hundred dollars, each bearing interest at the rate of three per centum per annum payable quarterly, and conveying to said trustee to secure the payment of said notes the real estate known as 1719 I street in the city of Washington, and delivered said note for $6,700 and the

deed of trust to her, but did not deliver to her the other notes, with the request that said deed be not recorded.

On the 27th day of January, 1888, Marmion prepared, and at his request Miss Walker executed and delivered to him the following paper:

"WASHINGTON, D. C., January 27, 1888.

"William V. Marmion has held under his name, but in trust for me, six thousand and seven hundred dollars in U. S. 3 per cent. bonds for the past six years, upon which the interest has been duly paid by him. In May, 1888, he gave me his note at twelve months for six thousand and seven hundred dollars to secure the payment to me of this trust fund. Up to this date the said William V. Marmion has, at various times, paid me sums upon said note, which in the aggregate amount to fourteen hundred dollars, the receipt whereof is hereby duly acknowledged, and I hereby declare that this trust fund as aforesaid, less fourteen hundred dollars which have been paid upon it as above mentioned, is the sole and only indebtedness of the said William V. Marmion to me; or, in other words, that at this date that he owes me a balance of five thousand three hundred dollars; and I hereby for value received, extend the time for the payment of said balance upon note from May 2d, 1888, to November 2d, 1889.

"In testimony whereof witness my hand and seal the day and date above written.

"(Signed) E. A. WALKER. [Seal.]

"Witness:

"(Signed) ELEN DIDGS."

On the 9th of August, 1888, Miss Walker being away from Washington, Marmion wrote and enclosed to her a check for $200, and 25 cents in stamps, saying in the letter that $50.25 was for interest and $150 was to be credited on the note.

On the 20th day of October, 1888, Marmion prepared and requested Miss Walker to sign the following paper:

"I, Elizabeth Agg Walker, of Washington, D. C., hereby declare that the promissory notes, numbered 1, 2 and 3, for the following sums, to wit, numbers 1 and 2 being for ten thousand dollars each, and number 3 being for eleven thousand and three hundred dollars, all of which said notes were made by William V. Marmion, payable to me one year after date, at the rate of three per cent. interest, interest payable quarterly, the date of payment being May 2d, 1888, the notes being dated May 2d, 1887, the said notes being described in a certain deed of trust executed by the said William V. Marmion to Joseph Gales McClellan, of St. Paul, Minnesota, as notes Nos. 1, 2 and 3 have been cancelled and fully paid and returned to the said William V. Marmion; and I further declare that the only claim which I hold against the said William V. Marmion or his property, as described in said deed, is for the unpaid balance due upon note described in said deed of trust as note No. 4, payable May 2, 1888, and extended to May 2, 1889.

"In testimony whereof witness my hand and seal this twentieth day of October, 1888.

"——— ———. [Seal.]"

But she did not sign it.

In the latter part of the year 1888 differences arose between Marmion and Miss Walker, and she left his house, and on the 4th day of December a deed of trust on premises 1719 I street from Marmion to W. W. Boarman, trustee, to secure Geo. C. Boarman $38,000, was recorded, and on the 10th day of December, 1888, Miss Walker caused the deed of trust to McClellan to be recorded.

On the 2d day of April, 1895, after a hearing upon the pleadings and evidence, the court below decreed the deed of trust from Marmion to Boarman to be void, and that said Marmion was trustee for said Walker, and referred the case to the auditor with instructions to state the account of the said trustee in relation to the funds of said Walker which had come to his hands, and in said accounting to

charge said trustee with the sum of $3,274.50, the amount received by him from Mrs. Carlisle for the interest of said Walker in the real estate known as 1722 I street, instead of $2,300, for which sum Marmion claimed he had purchased the interest of Miss Walker.

In stating the account the auditor treated the giving of the note in 1885, and the renewal thereof on the 2d day of May, 1887, and the giving of the deed of trust to secure it on the same day, and the preparation by him and taking from Miss Walker of the paper of the 27th of January, 1888, stating the amount still due on said note and extending the time for payment of the balance, as the equivalent of an account stated, and allowed Marmion credit for $1,400 recited in that paper as having been paid by him, and $1,700 in addition, which he had paid on that note after that date, and the sum of $450 for nine month's board of Miss Walker and maid after January 27, 1888, and rejected all of the demand of Marmion for board prior to that date, and all of his claim for medical attention and services. The auditor also charged Marmion in said account with $974.50, the difference between what he received from Miss Walker's interest in the house No. 1722 I street and the $2,300, with interest thereon from the 7th day of July, 1881.

Marmion's counsel excepted to the auditor's report on grounds sufficiently comprehensive to raise all the questions raised by his answer and cross-bill. At the final hearing of the cause, the court below sustained the exception to the allowance of only $450 for nine months' board, and allowed $550 in lieu thereof for eleven months' board, on the ground that the auditor had made a clerical error in the number of months that Miss Walker and maid boarded with Marmion after the 27th day of January, 1888, and also corrected the auditor's report in relation to the allowance of interest on the $974.50 from July 7, 1881, and allowed interest only from the 2d day of April, 1895, the date of the interlocutory decree in this cause. In all other particulars the court con-

firmed the auditor's report, and decreed that there was due from Marmion to the executor of Miss Walker the sum of $4,024.50 with interest on $3,050, the balance due on said note from December 10, 1888, to November 2, 1889, at 3 per cent. and at 6 per cent. thereafter until paid, and interest on $974.50 from the 2d day of April, 1895, and that the deed of trust from Marmion to McClellan of May 2, 1887, is a security for the payment thereof. From this decree both parties appealed, and the solicitors for Marmion assigned the following errors in said decree:

"1. The court below erred in charging the defendant Marmion with the sum of $3,274.50 as the amount of Elizabeth A. Walker's interest in the proceeds of the sale of premises No. 1722 I street, northwest, instead of charging him with only $2,300.00 as the amount of her said interest.

"2. The court below erred in refusing to allow the defendant Marmion's charge against the complainant Elizabeth A. Walker for board and lodging at the rate of $35.00 per month from August, 1881, to December, 1888, instead of allowing him only $550 for such board and lodging.

"3. The court below erred in refusing to allow the defendant Marmion credit for his charges against the complainant Elizabeth A. Walker for the medical services rendered to her by him at her request."

And the counsel for McClellan, executor, assigned as error the refusal of the court to allow interest on the $974.50 from the time the money was received by Marmion.

*Mr. George E. Hamilton* and *Mr. M. J. Colbert* for the appellant Marmion:

1. There is no proof that, with respect to the real estate referred to, Marmion occupied to Miss Walker the relation of trustee. There is no hint of any such relation in the record outside of the allegations contained in the original bill, which do not constitute proof of any fact. There is no proof anywhere that with respect to Miss Walker's interest

in the real estate Marmion was ever her trustee, and hence it must follow that he was just as competent to purchase from Miss Walker as was Mr. Carlisle. " The trustee may purchase of the *cestui que trust* property not embraced in the trust fund, care being taken that the influence of the relation does not affect the transaction." 1 Perry on Trusts (3d Ed.), 238; *Eldridge* v. *Smith,* 34 Vt. 484.

In this country at least, it is well settled that a trustee may purchase from his *cestui que trust,* if no advantage be taken by the trustee by misrepresentation, concealment or undue influence, and the *cestui que trust* understood the nature and effect of the transaction. *Brown* v. *Cowell,* 116 Mass. 465; *Jennison* v. *Hopgood,* 7 Pick. 1; *Farnham* v. *Brooks,* 9 Pick. 212. The trustee is not forbidden to buy directly of his *cestui que trust,* but the burden is on him to show a full, fair and sufficient consideration, and it must appear that the *cestui que trust* had power to sell, and had the fullest information concerning the transaction. 27 Am. & Eng. Encyc. 213, and cases cited; 1 Perry on Trusts (3d Ed.), p. 238; *Smith* v. *Townshend,* 27 Md. 368; *Breckett* v. *Tyler,* 3 MacArthur, 319; *Spencer's Appeal,* 80 Pa. St. 317. It appears from the complainant's own evidence that the price paid by Marmion was the full value of the property, and it further appears that Miss Walker had full knowledge of the negotiations between her nephew, and Mr. Carlisle, and that she sold to Marmion with full knowledge of all the facts.

Another reason why this portion of the decree is erroneous and should be reversed lies in the fact that the view taken by the auditor and also by the court below, was that the various papers set out in the record were the equivalent of an account stated between the parties, and that the trust fund in Marmion's hands was the sum of $6,700, which sum is arrived at on the theory that the purchase price paid to Miss Walker by Marmion was $2,300 only. If these various papers and agreements between the parties constituted

an account stated between the parties, they must constitute an account stated for all purposes and not merely for one purpose.

2. It is objected on the part of the complainant that after the death of Miss Walker, and when the cause stood revived in the name of her executor, Dr. Marmion was not a competent witness as to transactions between himself and the deceased. Conceding this to be so, Marmion's answer was filed in the lifetime of Miss Walker and has the force and effect of evidence in his favor. It is true that the bill waives an answer under oath, but the right to answer under oath and thus to compel the complainant to overcome the sworn answer by the testimony of more than a single witness is a right of which the defendant can not be deprived. Story's Eq. Pl. (9th Ed.), par. 874, note *a*; *Clements* v. *Moore*, 6 Wall. 299; *Brown* v. *Buckley*, 14 N. J. Eq., p. 306.

3. The nature of an account stated is that the parties consider the claims and strike a balance, after which the vouchers may be destroyed and the balance may not be disputed. It is an agreement by both parties that the items are true. There must be a mutual examination of the claim of each other by the parties, and a mutual agreement as to the correctness of the allowance or disallowance of the respective claims. 6 Wait's Actions and Defenses, 424. Assuming that the $6,700.00 note was intended to be a valid security in the hands of Miss Walker, the giving of such a note would only be *prima facie* evidence of a settlement and would still be open to explanation. *Morton* v. *Rogers*, 14 Wendell, 576.

*Mr. William G. Johnson* for the appellant McClellan :

1. If, as claimed by the complainant, relations of peculiar trust and confidence subsisted between the complainant and the defendant, and by reason of those relations he acquired the possession and control of her property; if, in addition to these circumstances, she was a helpless invalid, and he acted as her physician, then the situation was such as, under

the law, precluded him from making any profit or advantage out of her estate, or any part of it. *Huguenin* v. *Beaseley,* 2 Wh. & Tud. Ld. Cases in Eq. 1156, and cases cited in notes; *Michoud* v. *Girod,* 4 How. 503, 554; *Brooks* v. *Martin,* 2 Wall. 70; Perry on Trusts, Secs. 194–210; Story's Eq. Jur., Secs. 322, 323; 2 Sugden on Vend. (7th Am. Ed.), Sec. 3, Par. 1, p. 362.

Where a technical trust is shown to exist, the law presumes confidence, influence and power in the trustee from that circumstance alone and dispenses with other proof. Where no technical trust exists, the confidence, influence and power must be proved by satisfactory evidence; but when proved by whatever means, the result is the same.

The relation of Marmion to the complainant as already shown was such as to render this transaction with the complainant *prima facie* fraudulent in law, and in order to sustain it, if it could be sustained at all, the burden was upon him to show that it was in all respects fair, and that the complainant was fully advised as to all material facts and circumstances known to him. Instead of this there is added to the transaction the elements of concealment, influence and disadvantage. The inequitable character of the transaction which the law presumes from the relations between the parties is intensified and made fraudulent in fact by the testimony of the defendant as to the manner in which the transaction was carried out.

2. Interest upon this sum of $974.50 should have been allowed. If, as the court adjudged, Marmion was bound to account to the complainant for that sum of money, he was undoubtedly chargeable with interest upon it from the time that he received it, because he had had this sum of money adjudged to belong to the complainant, and had the use of it during all that time, it being the property of the complainant, and her right to the interest followed as a necessary consequence. Moreover, the report of the auditor was not excepted to by the defendant Marmion in this particu-

11 Ct. App.—32

lar.  It is a well established principle of chancery practice
that all items of the auditor's report not excepted to within
the time limited for filing exceptions are binding alike
upon parties and court.    *Osborn* v. *Gheen*, 5 Mack. 193.

Mr. Justice COLE, of the Supreme Court of the District of
Columbia, who sat with the court on the hearing of this
cause in the place of Mr. Justice MORRIS, delivered the
opinion of the Court:

It will be most convenient to first consider the question
arising upon the second and third assignments or error by
Marmion's counsel, which is that it was error to refuse Mar-
mion credit for the amounts claimed by him for the board
of Miss Walker, and for medical attendance to her prior to
the 27th day of January, 1888.

The giving of the note for $6,700 by Marmion to Miss
Walker in 1885, the renewal of it on the 2d day of May,
1887, and the giving of a deed of trust on the last men-
tioned date to secure it, and the preparation and acceptance
by him of the written acknowledgment by Miss Walker of
the 27th day of January, 1888, of the receipt of certain pay-
ments on said note, and stating the balance due thereon at
that date, and extending the time for the payment thereof,
was the equivalent of an account stated between these par-
ties at each of the dates above mentioned.

Where cross demands or mutual accounts or dealings exist
between parties, and the one party gives to the other a note
or security for the payment of a definite amount growing
out of said accounts or transactions, or some of them, the
presumption arises that the amount for which such note or
security is given is the balance due the party to whom it is
given upon a statement or settlement of the mutual accounts
existing between them at the time, including all the items
or demands which each then had against the other, and the
burden is upon the party controverting such presumption
to prove by clear and satisfactory evidence, not only that

some items were omitted from said accounting, but also that they were omitted by the mutual mistake of both parties or the fraud of the party to whom the note or security is given. *Chappedelaine* v. *Dechenaue*, 4 Cranch, 306; *Lake* v. *Tyson*, 6 N. Y. 461; *DeFreest* v. *Bloomingdale*, 5 Denio, 304; *Maybury* v. *Berkery*, 102 Mich. 126; Rice's Ev., p. 103; 1 Taylor Ev., Sec. 124; *Gaskin* v. *Wells and others*, 15 Ind. 253.

In the case of *DeFreest* v. *Bloomingdale et al., executors of Philip DeFreest, deceased,* a father devised to his two sons, the plaintiff and the defendant's testator, a farm on condition that they should support their mother during her life. The plaintiff supported her for seven years and then brought this suit to recover half the expense thereof. The defendants proved that on the 27th of March, 1839, the plaintiff gave his note to the defendant's testator for $100, which came to their hands with other papers and was subsequently paid by plaintiff. The referee allowed the plaintiff one-half of the value of the board for the seven years, more than three of which were prior to the giving of the note. Upon a motion to set aside the report of the referee, the court delivered the following opinion, by Beardsley, Ch. J.:

"As the referee allowed the plaintiff for more than seven years' board of the widow DeFreest, and there was no pretence of a right to recover for such board after January, 1843, the time for which the allowance was made must have commenced as early as 1836. This was some three years before the plaintiff gave his promissory note to the defendants' testator for $100 and interest. It does not appear what this note was given for, and, unexplained, the giving of the note was *prima facie* evidence that nothing remained due to the maker of the note from the person to whom it was delivered. This is a reasonable inference from the fact of giving a note, and the principle applies with full force to this case, for there was nothing to show on what consideration the note was given, or to rebut the ordinary presumption, that the demands between the parties were then

liquidated and the note made for the balance found to be due from the maker. It is highly improbable that the plaintiff would have given his note to a person who was then indebted to him in a sum, according to this report, much beyond the amount of the note, and until some explanation shall be given the note is decisive evidence against any such claim. If an explanation can be given it must come from the plaintiff, for the presumption is that the note was given for a balance admitted to be due. Without examining other points made, the one already stated is decisive against the report and it must be set aside."

The present case is a much stronger one for the presumption of a settlement than the one in Denio. There it did not appear what the consideration for the note was. In this case it clearly appears that the note was given for funds of Miss Walker which Marmion held in trust for her. If he had any demands against her at either of the dates above mentioned, the presumption is that they were deducted from Marmion's total liability, leaving the balance as acknowledged by the notes and the paper granting extension of time for payment. If it could be said that the evidence shows that nothing was deducted for board and medical attendance, the presumption would still remain that these had been arranged or settled in some other way.

In the case of *Chappedelaine et al.* v. *Dechenaue*, above referred to, Chief Justice Marshall, speaking of the effect of a stated account, uses the following language:

"The stated account is pleaded in bar of so much of the bill as requires that the subject should again be opened, and the particular errors assigned, with the exception of one in the addition, are denied in the answer.

"That the plea in bar must be sustained, except so far as it may be in the power of the representatives of Chappedelaine to show clearly that errors have been committed, is a proposition about which no member of the court has doubted for an instant. No practice could be more dangerous than

that of opening accounts which the parties themselves have adjusted, on suggestion supported by doubtful or by only probable testimony.   But if palpable errors be shown, errors which can not be misunderstood, the settlement must so far be considered as made upon absolute mistake or imposition, and ought not to be obligatory on the injured party or his representatives, because such items can not be supposed to have received his assent.   The whole labor or proof lies upon the party objecting to the account, and errors which he does not plainly establish can not be supposed to exist."

The situation in this case is similar to the one in the case from which the foregoing quotation is made, the main difference being that in that case the stated account was attacked by the bill, while in this case it is assailed by the answer.   Marmion's answer admits the giving of the note and security and the acknowledgment by him of a balance due on the 27th day of January, 1888, and seeks to avoid the presumption arising therefrom by the allegation of new or affirmative matter.   Counsel for Marmion contended that his answer claiming the right to charge against the note his bills for board and medical attendance occurring prior to January 27, 1888, is evidence in his favor.   But the conclusive answer to that argument is that that part of the answer is affirmative matter and is not responsive to the allegations of the bill, which is necessary in order to render the statements of an answer evidence for the defendant.   Nor is that allegation of the answer supported by any competent evidence.   Marmion is the only witness who testifies tending to prove that his bills for board and medical attendance were not settled, adjusted or paid at or before the times of the giving by him of the notes, and the making of the acknowledgment of the 27th of January, 1888. But he is an incompetent witness to prove such facts in this case, as it involves his testifying against an executor as to transactions with and statements by the testatrix, which would be in violation of both the letter and spirit of Sec-

tion 858 of the Revised Statutes of the United States, relating to the incompetency as witnesses of parties to a suit.

The testimony of Lydia Marmion, tending to prove the admission of Miss Walker that she was to pay Dr. Marmion board, does not reach the point, as it has no tendency to rebut the presumption arising from the settlements.   But if Marmion were a competent witness, his testimony does not go far enough to impeach the account stated.   It only tends to prove that the items of board and medical attendance were not included in the settlement.   It does not tend to show that they were left out either through a mutual mistake of the parties or the fraud of Miss Walker, one of which is necessary to impeach the balance admitted.   He knew of those items at the time, and the presumption is that if they were justly due him at the time of those settlements he would have insisted upon their going in reduction of liquidation of the balance due from him, and this presumption is conclusive upon him until he proves not only that they were not considered in those settlements, but some reasonable grounds why they were not, consistent with their being due him at the time.   There was no error, therefore, in the action of the court below in rejecting the claim of Marmion for board and medical attendance prior to the 27th day of January, 1888. Miss Walker remained in the family of Dr. Marmion, with her maid, for eleven months subsequent to the last mentioned date, and he was allowed $550 therefor; and there is no error assigned upon that action of the court.   But it is contended that there was error in not allowing Dr. Marmion for medical attention after the last named date.   The item of his bill is $1,200 for medical and surgical services from January 1, 1888, to September 20, 1888.   The evidence in relation to it is exceedingly meagre and unsatisfactory.   The conclusion of the auditor in relation to this charge is as follows:

"The claim of $1,200 for medical and surgical services rendered from January 1st, 1888, to September 20th, 1888, is not sufficiently explained in the proof.   I am not able to

estimate the character, extent, or value of the services. That Miss Walker, in her condition, required some assistance and attention beyond that of her maid, and that he rendered such service, appears in the testimony of the defendant Marmion; but whether such as he describes comes within the designation of medical or surgical service, and, if so, the extent and value of the same, are matters left uncertain."

This characterization of the evidence met the approval of the court below, in which we concur, and we think there was no error in rejecting that item.

The remaining assignment of error made by the attorneys for Marmion is that the court erred in charging him with the sum of $974.50, the difference between $2,300, the sum for which Marmion claims to have purchased Miss Walker's interest in premises 1722 I street, and the sum of $3,274.50, the amount which Mrs. Carlisle paid Marmion therefor.

It is contended by counsel for the complainant in the original bill that at the time of the conveyance by Miss Walker to Marmion a relation of confidence existed between them which, if it did not totally disable the latter in law from purchasing the property from the former, rendered the sale voidable, unless it was clearly shown that she was fully informed of all material facts and circumstances affecting the value of her interest in said property, and that she fully understood that she was making a sale to Marmion and intended to do so, and that the price received by her very nearly approximated the full value thereof at the time, and they insist that the elements necessary to make it a valid sale in the contemplation of a court of equity are wanting.

It is undoubtedly the doctrine of equity that where a conventional trust relation exists between parties, the trustee is incompetent in law to take the property which is the subject of the trust by purchase from the *cestui que trust*,

and that although no conventional trust relation may exist between the parties, yet if there be in fact a relation of confidence, the person in whom the confidence is reposed will not be permitted to derive any personal advantage from dealing with the property of the other party, and that any sale by the party reposing the trust, to the other, will be voidable at the election of the former, unless he acted with a knowledge of all the material facts affecting the transaction, and fully understood that he was disposing of his property, and received approximately, at least, the full value thereof. The latter part of the foregoing proposition is stated by the Supreme Court in the case of *Brooks* v. *Martin*, 2 Wallace, 70, in the following language:

"If the parties are to be regarded in this transaction as holding towards each other no different relations from those which ordinarily attend buyer and seller, and as therefore under no special obligation to deal conscientiously with each other, we are satisfied that no such fraud is proven as would justify a court in setting aside an executed contract. But there *are* relations of trust and confidence which one man may occupy towards another, *either personally* or in regard to the particular property which is the subject of the contract, which impose upon him a special and peculiar obligation to deal with the other person towards whom he stands so related, with a candor, a fairness and a refusal to avail himself of any advantage of superior information or other favorable circumstance not required by courts of justice in the usual business transactions of life."

The following authorities also support the general rule above stated: Perry on Trusts, Secs. 194–210; Story's Eq. Jur., Secs. 322, 323; *Michoud* v. *Girod*, 4 How. 503; *Rankin* v. *Porter*, 7 Watts. 390; *Huguenin* v. *Basely*, 2 Wh. & Tud. Leading Cases in Equity, and other cases referred to in the notes to that case; *Smith* v. *Kay*, 7 H. L. 779.

Counsel for Marmion contend that the foregoing rule does not apply to the transaction in question as no relation

of trust existed at the time in relation to Miss Walker's interest in the real estate in question. But according to the above cited authorities, the rule applies to all transactions between the parties where a relation of confidence exists generally. Does the evidence in this case establish such a relation?

The physical condition of Miss Walker at and about the time in question is stated by Dr. Marmion in his testimony in the following language: "From 1879 to about 1881 she was fairly active, but delicate and a considerable sufferer from rheumatism. From 1881 on she failed slowly but surely, and became unable to go up and down stairs, and could not use her hands much." Dr. Rosse, a witness introduced by the defendant in the original bill, speaking of her condition in 1880 and 1881 and afterwards, said that "she was in a condition to be dependent upon those around her." The only reasonable inference deducible from this and other like evidence in the record is that from about the time she went to live in Dr. Marmion's family she was not in a condition to give much active attention to business such as selling real estate and making investments of money. It is not shown that she had ever had any experience in transacting such business. She was, therefore, in a condition to desire, if not require, some one in whom she could confide to transact her business for her. Defendant was the husband of her niece, in whose family she was living, and it was natural that she should turn to him for advice, and especially so as she knew him to be a man of considerable means, accustomed to business transactions. That she did so with confidence in him is shown from the fact that when she received the $5,000 from her mother's estate in February, 1881, she immediately handed it to him with a request that he invest it as he deemed best, taking and asking no receipt, note or security. That Marmion knew that she trusted him implicitly appears from the fact that he offered her no note or security for the money, but invested it in

bonds registered in his own name and retained them in his possession, giving her no note or security therefor. This was the posture of affairs, when in June, 1881, the transaction in question occurred. Marmion's version of the transaction is that he purchased her interest in the property at $2,300. He admits that he paid no purchase money at the time, but says that a month or more subsequently he invested the amount in bonds for her, but in his own name. But whether Miss Walker understood it as a sale, or as a transfer of her interest to him to be sold for her benefit, the transaction in itself manifests her unbounded confidence in him, as she conveyed to him all the residue of her then remaining estate without receiving one cent in value, or any evidence that she was entitled to receive anything, while the deed she executed was conclusive evidence against her right to demand anything of him on account of that interest, in the absence of any explanation of the transaction. Stronger evidence of complete trust reposed by one person in another than is afforded by this transaction can hardly be imagined.

These admitted facts bring the transaction fully within the rule under consideration, and subject it to the test stated by Mr. Justice Miller in the case of *Brooks* v. *Martin, supra,* in the following language:

"We lay down, then, as applicable to the case before us, and to all others of like character, that in order to sustain a sale, it must be made to appear, first, that the price paid approximates reasonably near to a fair and adequate consideration for the thing purchased; and, second, that all the information in possession of the purchaser, which was necessary to enable the seller to form a sound judgment of the value of what he sold, should have been communicated by the former to the latter."

And all the authorities agree that the burden is upon the purchaser to establish these facts by clear and satisfactory evidence. Are those facts established in this case?

Marmion claims to have purchased from Miss Walker, on the 25th day of June, 1881, for $2,300, for her interest, which was at the rate of $9,200 for the whole, and at the rate at which Carlisle had purchased the interests of the other joint owners four days previous.

That Marmion considered the property worth more than $9,200 at the time appears from the occurrences both prior and subsequent to the conveyance to him by Miss Walker. When he was informed by McClellan that Carlisle had made an offer at the rate of $9,000 for the whole, he immediately offered $9,100; and when he learned that McClellan had sold the interests controlled by him at the rate of $9,200 to Carlisle, he expressed surprise and immediately, on the 22d of June, wrote Carlisle, asking his price for the interest he had purchased. On the 24th day of June, 1881, he received a reply from Carlisle, saying that he did not wish to sell, but desired to purchase the interests of Mrs. Marmion and Miss Walker, and was ready, immediately, "to give *full value* for" them. This was the day before the conveyance of Miss Walker to Marmion. His statement in his testimony of how he and Carlisle entered into competition for this property is as follows:

"I telegraphed Mr. Carlisle to the White Sulphur Springs, calling his attention to the fact that I was the owner of these fractional interests which he wished to have settled, asking him to withdraw the partition suit, and that we could then bid the property off, one against the other, without the expense of the suit. Mr. Carlisle replied that that would be very satisfactory to him, in a very long letter, winding up, though, with the statement that that was satisfactory to him. I submitted a bid to Mr. Carlisle; he submitted it to his wife; she declined the bid and offered a higher price for the whole property. I would decline that and offer a still higher price for the entire property, and so the bidding went on, sometimes by telephone, occasionally, in all probability, by letter, though I do not remember that, and ultimately, when the

price had reached as high a figure as I cared to go, I accepted Mrs. Carlisle's bid through Mr. Carlisle."

On the 6th of September, 1881, these negotiations resulted in a sale by Marmion to Carlisle for $4,366, or at the rate of $3,274.50 for Miss Walker's interest, a sum $974.50 in excess of what he claims to have agreed to give her for it a little more than sixty days previously. The conclusion that at the time he took the conveyance from her he was ready and willing to purchase the residue of the property at a price largely in excess of the rate he claims to have agred to pay for her interest is inevitable. He sold the interest obtained from her for a price more than forty per centum in advance of that for which he says she sold to him. What he was willing to pay for the other interests, and what Carlisle actually paid for that sold him by Marmion, must be considered the reasonable value for the property in the absence of proof to the contrary.

Nor does it appear that Miss Walker was informed of all the material facts affecting the value of this property at the time or before she conveyed to Marmion. She was not informed that Marmion had offered to purchase the interest that had been conveyed to Mrs. Carlisle, and had inquired the price, and received a reply from Mr. Carlisle declining in emphatic terms to sell, but offering to purchase the other interests at full value, and that Carlisle and Marmion had arranged to carry on a private auction for the property. These facts, considered in connection with the evident desire of each of those gentlemen to acquire the entire property, and their ample means to enable them to do so, were important facts for the information of one about to dispose of an interest in that property. It appears, therefore, that Marmion did not communicate to Miss Walker all the information in his possession necessary to enable her to form a sound judgment of the value of the interest which it is claimed she sold to him, and it also appears that the price which she received did not approximate reasonably near to a fair and

adequate consideration for her interest, under the facts in this case; and applying the rule stated by Mr. Justice Miller, hereinbefore quoted, Miss Walker, upon discovery of these facts (and it does not appear that she had knowledge of them until after the filing of her bill) had the right to avoid the sale, even if she understood the transaction to be a sale by her to Marmion.

But it appears from the record that Miss Walker did not understand that she sold her interest to Marmion. The allegation of the original bill is that he sold it as her "trusted agent." The deed unexplained would be evidence of a sale, but upon the fact admitted in Marmion's answer that no purchase money was paid by him to her at the time of the conveyance, the law would treat him as holding the legal title as trustee for the grantor. The only evidence in support of Marmion's contention that at the time of the conveyance there was an understanding between them that he should hold the $2,300 as purchase money in his hands and invest it for her is his own testimony to that effect, which, as hereinbefore shown, is incompetent in this case. So that in any aspect of the case she was entitled to receive the price for which her interest in the property was sold to Mrs. Carlisle.

It is contended, however, by counsel for Marmion, that if it be held that there was the equivalent of an account stated between them so as to debar him from asserting his claims for board and medical attendance, the same rule would preclude her from now asserting this item of $974.50. But the facts relating to this claim are entirely different from those in relation to Marmion's claims. It is admitted by Marmion that he never accounted to her for this sum, and now denies her right to it, and it does not appear that Miss Walker knew at the times she received the notes and gave the acknowledgment to Marmion that he had received for her interest a sum in excess of $2,300. She had no knowledge of the item and he did not believe her entitled to it. This

is at least the equivalent of a mutual mistake, upon which ground it is admitted that an account stated may be corrected. It is, therefore, very clear that the court did not err in charging the defendant with this item.

This leaves for consideration the assignment of error made by the counsel for complainant in the original bill, that the court erred in not charging the defendant with interest on the $974.50 from the date it came to his hands, instead of from the 2d day of April, 1895, when the court by interlocutory decree declared it to be a part of the trust fund.

The specification of error in relation to this item of interest is two-fold. The auditor allowed interest on the $974.50 from the 7th day of July, 1881, and the counsel for Marmion filed no exception to the auditor's report specially objecting to the allowance of interest, and the claim is that the court erred in considering that question in the absence of such an exception. But defendant's counsel did except to the report of the auditor in charging this sum against Marmion, and this was sufficient to raise all questions in relation thereto, and involved a consideration of the interest as well as the principal.

The other ground of error relied upon is that as the money belonged to Miss Walker, Marmion is liable for interest thereon from the time it came to his hands, and he converted it to his own use. But this money did not come to the defendant's hands in the execution of an express trust, nor is there any contract between the parties, express or implied, to pay interest. If the complainant is entitled to interest upon the sum in question it is by way of damages for delaying payment after the sum became due and payable. In the case of *Redfield* v. *Ystalyfera Iron Co.*, 110 U. S. 176, speaking about the recovery of interest, the Supreme Court said: "Interest is given on money demands as damages for delay in payment, being in just compensation to the plaintiff for a default on the part of his debtor. Where it is reserved expressly in the contract, or is implied

by the nature of the promise, it becomes a part of the debt, and is recoverable as of right; but when it is given as damages, it is often matter of discretion." Marmion claimed this money as his own, and there is nothing to show that he did not in good faith believe that he might properly purchase from Miss Walker, as he might from any other person. The law, therefore, does not raise an implied promise on his part to pay either principal or interest. Had Marmion understood that in law this was her money, there is every reason to believe that he would have invested it, as he did her other funds, and in the same kind of securities. It appears in the evidence that he paid the interest on the whole $6,700 for some time after the principal had been much reduced by partial payments to her, and under the circumstances it is equitable to charge interest on the $974.50 only from the time that Marmion was called upon by the decree of the court to account for and pay over the money, as was done by the decree under consideration.

This disposes of all the errors assigned, and there being none found in the record, the decree must be *affirmed, each party to pay his own costs on appeal.*